## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TRISHA S. HOOVER,                                  :
        Plaintiff                              :
                                               :
vs.                                                :
                                               :     Civil Action No.:  1:23-cv-237
PENNSYLVANIA DEPARTMENT                            :
    OF CORRECTIONS,                               :
        Defendant                              :

### COMPLAINT IN CIVIL ACTION

AND NOW, comes the Plaintiff, Trisha S. Hoover, by and through her attorney, Andrew J. Sisinni, Esquire, of Sisinni Legal, and files this *Complaint in Civil Action* and states the following:

### INTRODUCTION

1.  This is a civil rights Complaint for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq.and a state law claim of Breach of Contract in the nature of the material breach of a Collective Bargaining Agreement with Defendant Employer, the Pennsylvania Department of Corrections .

2.  *Sergeant Trisha S. Hoover* was employed as a *Corrections Officer -2 (CO-2)* and Handler in the Canine Drug Interdiction Unit of the Pennsylvania Department of Corrections when on or about August 10, 2022 a new supervisor, *Captain Jason Berfield*, was assigned to her. That new supervisor treated Trisha Hoover differently from her male co-workers within the unit due to her gender.

3.  Trisha Hoover in conjunction with her employment was also a Union Association Representative and forcefully and actively exercised her rights to advocate for herself and her co-workers, which propagated in some instances confrontation with not only Captain Jason Berfield but with another Department superior official, *Director James Barnacle*, the Department of Corrections Director of the Bureau of Investigations and Intelligence (BII) who was ranked above her new supervisor with whom she experienced the course of disparate treatment.

4.      This disparate treatment caused her to initiate a ***Grievance*** with her Union Association, i.e. the ***Pennsylvania State Corrections Officers Association*** on September 11, 2022 <u>AND</u> a ***Complaint*** with the ***Equal Employment Opportunity Commission*** on September 15, 2022.

5.      Trisha S. Hoover was "Suspended without Pay" on September 23, 2022.

6.      Trisha Hoover's new supervisor, ***Captain Jason Berfield***, in concert with and at the direction of the higher official, ***Director James Barnacle***, engaged in a scheme designed to falsely accuse Trisha Hoover of fraud relating to the calculation of the hours of her work day and thus her wages and the provision of overtime based on alleged inflated hours.

7.      These false allegations of fraud were all related to the permissible time period as to when Trisha Hoover's work day commenced given her specialized duties as a K-9 Handler who had to care for and maintain the Department canines who resided with her.  Trisha Hoover had been expressly authorized and apprised by her former Superior Officer, as well as his Superior Officer, that her work day was deemed to commence when she engaged in the morning care and maintenance associated with the canines.  She had to submit her work hours predicated in that understanding and her Superiors consistently signed-off on that practice as per their representations to her endorsing that calculation, which is definitively documented and affirmed.

8.      Trisha Hoover's new superior, ***Captain Jason Berfield***, and the other high ranking official, ***Director James Barnacle***, who were cohorts in the campaign to falsely accuse Trisha Hoover of engaging in fraud, did not concur with that practice and instead asserted and intended to enforce that CO-2 Hoover's work day commenced when she entered her Department-issued vehicle with the canines and transported the canines to her initial assignment for the day and that her calculation of her work day under the established practice constituted Felony Fraud and Felony Theft.

9.     The respective Department officials purposely sought to act against Trisha Hoover on September 12, 2022 when they re-routed her to another unscheduled assignment and then, shortly thereafter, directed a ***Criminal Investigator, Harold Kertes***, to confront her and make formal accusations of Felony Fraud and Felony Theft; specifically stealing time and falsifying time in regard to her work hours.  This Criminal Investigator was acting under false pretenses as there was no underlying basis to the allegations.  Instead, the scheme was precipitated by the underlying acrimony between the Superior Officials of the Agency and Trisha Hoover arising from her position as Union Agency Representative and her activity on behalf of the Union Agency and other instances.

10.    Trisha Hoover was summarily placed on "***Unpaid Suspension***" and stripped of her vehicle and canines whereupon she remained on unpaid suspension from September 23, 2022 through January 7, 2023 when the suspension was retracted.  However, Trisha Hoover, was reinstated with a demotion to a lower rank of Corrections Officer-1 (CO-1) <u>AND</u> removed from her position and rank as a Sergeant <u>AND</u> removed as a Handler with the K-9 Drug Interdiction Unit while the disciplinary letter citing the allegations of Felony Fraud, Felony Theft,  and other claims of misconduct that were all baseless and unsupportable.  Trisha Hoover was reinstated at a lower wage rate than her former position thereby impacting her weekly wages, her Pension and her capacity to participate in the Deferred Compensation program.  Moreover, the existence of the Disciplinary Letter in her personnel file will serve to foreclose Trisha Hoover from promotion and advancement in the Department.

11.    The conduct in reinstating Trisha Hoover to a lesser position tantamount to a demotion without any legitimate or articulable basis is ***<u>retaliatory</u>*** given her exercise of her rights in filing a Grievance with her Union AND filing a Discrimination Claim with the Equal Employment Opportunity Commission ("EEOC") eight (8) days prior to her suspension without pay.

12.  If the Department of Corrections believed that its initial allegations of Felony Fraud and Felony Theft were valid and founded, then there was no basis to retract the suspension and take measures to make her whole as to her lost pay (*both Regular Time Pay and Overtime Pay*) and Benefits during the time period of suspension.  The further mistreatment of her in the nature of a demotion and loss of income related thereto without any rationale must be deemed suspect and borne-out of retaliation for the exercising of her rights to engage in a Union Grievance with the Pennsylvania State Corrections Officers Association **AND** the EEOC investigation and review.  Trisha S. Hoover should not be prejudiced by her lawful exercise of said rights, which would be countenanced by permitting the Department of Corrections to issue a sanction with a material monetary detriment to Trisha S. Hoover given her demotion upon reinstatement.

13.  The wholesale course of conduct by the Department of Corrections as to the summary suspension of Trisha S. Hoover and the baseless predicate for that action in conjunction with the failure to engage in progressive discipline further implicates the ***Collective Bargaining Agreement*** which protects Trisha Hoover as a Department Employee and Union Member as to whether the Department engaged in a material contractual breach of that employment agreement.

14.  These facts and claims will be further expounded upon hereinafter in the factual allegations.

## JURISDICTION AND VENUE

15.  This Court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. Sections 1331 and 1343.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. Section 1367.

16.  Venue is proper under 28 U.S.C. Section 1391 because all of the conduct complained of occurred within this District.

**PARTIES**

17. Plaintiff, Trisha S. Hoover (hereinafter "***Trisha Hoover***"), is an adult individual currently residing at 23892 Thornapple Drive, Cambridge Springs, Pennsylvania 16403.

18. Defendant, the Pennsylvania Department of Corrections (hereinafter ***"Department of Corrections"***), is a state agency of the Commonwealth of Pennsylvania with a principal office located at 1920 Technology Parkway, Mechanicsburg, Pennsylvania 17055.

19. The Pennsylvania Department of Corrections is comprised of various bureaus and offices that support the department's mission including the Bureau of Investigations and Intelligence (BII).

**PROCEDURAL BACKGROUND**

20. Plaintiff Trisha Hoover exhausted her administrative remedies at the Equal Employment Opportunity Commission (hereinafter "***EEOC***").

21. The U.S. Equal Employment Opportunity Commission (EEOC) elected not to proceed with further investigation upon the retraction of the suspension and reinstatement of Trisha Hoover to employment and made no findings or adjudication as to the merits of the underlying claims. A ***Notice of Right to Sue*** was issued on May 16, 2023. (A copy of the EEOC Determination of Charge and Notice of Your Right to Sue is attached hereto and marked as "Exhibit A").

22. This Complaint is being filed within ninety (90) days of Trisha S. Hoover's receipt of the EEOC's Notice of Right to Sue.

**ALLEGATIONS OF FACT**

23. Trisha S. Hoover commenced her employment with the Department of Corrections in March of 2005 starting out at the employment designation of a Corrections Officer-1 (CO-1).

24. Trisha S. Hoover advanced to a Corrections Officer-2 (CO-2) with the rank of Sergeant and was ultimately employed as a handler with the K-9 Drug Interdiction Unit, which required extensive and specialized training on her part to attain that position demanding discrete responsibility within the Department of Corrections personnel.

25. Trisha S. Hoover was employed as a handler within the K-9 Drug Interdiction Unit within the Department of Corrections from 2017 up to September 22, 2022.

26. Trisha S. Hoover, in conjunction with her duties as a Corrections Officer-2, was also a Union Representative for the Pennsylvania State Corrections Officers Association (hereinafter "***Association***") comprising the employees of the Department of Corrections who were governed by a duly imposed Collective Bargaining Agreement.

27. In her capacity as a Union Representative for the Pennsylvania State Corrections Officers Association, Trisha Hoover was an active advocate for the protection of and adherence to the rights of the Department's H-1 Union Members.

28. The general policy, protocol, and practice relative to the K-9 handlers within the Department of Corrections at all times relevant to the Plaintiff's tenure within that position was that a firm two-week schedule of duties was issued for each K-9 handler, which schedule was not subject to modification absent some articulable emergency or exigency which compelled an alteration in the schedule for that time period on active duty.

29. In her capacity as Union Representative for the Association, Trisha S. Hoover had an involved meeting and several E-mail exchange discussions with  James Barnacle, the Department of Corrections Director of the Bureau of Investigations and Intelligence (BII), and with  Department of Corrections Captain Jason Berfield, relative to the necessity for continued strict adherence to the policy and protocol of firm and unchanging two-week schedules for the K-9 handlers within the Department of Corrections.  Director Barnacle and Captain Berfield, in essence, scoffed at that policy and protocol and; instead, citing that the schedules were subject to their whim and/or arbitrary modification without any recourse or basis for objection or challenge in contravention of any need to show an emergency or exigency for adjustment.  Director Barnacle made the statement "*I don't care about the Collective Bargaining Agreement*" and/or "*Forget about the Collective Bargaining Agreement*" to Trisha S. Hoover's immediate Supervisor and direct report, Lieutenant Joseph Burger, who immediately informed CO-2 Sargent Trisha Hoover about what transpired and what was said during his discussions with these two (2) men.

30.  As a direct consequence of these encounters and discussions, CO-2 Trisha Hoover perceived that there was an underlying acrimony engendered from both Men; specifically, Director James Barnacle and Captain Jason Berfield, as to their perception and treatment of her and; further, that their professional relationship had been impacted by this disagreement regarding what CO-2 Hoover deemed to be a fundamental term and condition of employment for herself and other Union Members as per the Collective Bargaining Agreement.

31.  Trisha S. Hoover, who had been a K-9 Handler since 2017, resided in Crawford County. From March 19, 2022 through September 23, 2022, she had complete custody of two (2) Department of Corrections' canines that resided with her thereby requiring her training, maintenance, and care of the canines which was an established policy for all K-9 Handlers.

32.  Trisha S. Hoover resided in Cambridge Springs, Pennsylvania with her two (2) canines who she had effectively raised and trained as Department of Corrections' assets while her work duties as to employing the canines for drug detection and suppression took her to various locations under the control and administration of the Department of Corrections including the bulk of her duties relating to State Correctional Institution (hereinafter "*SCI*") - Albion and two (2) Half-way House State Parole facilities located within Erie County.

33.  Given the unique character and scope of her work duties as a K-9 Handler, Sergeant Trisha Hoover was apprised by her direct supervisor, Lieutenant Joseph Burger, and her previous Supervisor, Captain/Major Daniel McMahon, that her work day was deemed to commence when she engaged in the necessary care and maintenance of the dogs at her home including removing them from their kennel *__AND__* walking the dogs outside to permit them to defecate and urinate *__AND__* to feed them prior to her getting into her Corrections Department-issued vehicle to travel to the scheduled location for her work that day as a K-9 handler. Then, her work day was deemed to end after returning home with the canines at the end of her work assignment when she again engaged in the necessary care and maintenance of the dogs at her home including walking them outside to permit them to defecate and urinate *__AND__* to feed them *__AND__* to place  the dogs back into their kennel.

7

34.     Based upon this written and verbal affirmation from her long-time Supervisor, Lieutenant Joseph Burger, specifically that her work day for purposes of calculation of her daily work hours for payment was to include and incorporate the daily morning maintenance involving the two (2) dogs who inhabited her residence and the daily after work maintenance involving the two (2) dogs who inhabited her residence, CO-2 Trisha Hoover consistently used that basis for the calculation and submission of her Regular Time work hours and her Overtime work hours.

35.     The inclusion of this time expended for the daily maintenance of the dogs, both before and after work, was required to be approved and signed-off by her Supervisor, Lieutenant Burger, as well as his supervisor, Captain/Major McMahon *(now retired Captain/Major McMahon)* without any objection or challenge as that inclusion had been expressly approved by Lieutenant Burger and Captain/Major McMahon in their official capacities.

36.     It is believed and therefore averred that all K-9 Handlers, the majority of whom within the cohort of Trisha S. Hoover were male employees, were similarly treated as to the scope of the calculation of their submitted Regular Time work hours AND Overtime work hours and were compensated accordingly.

37.     This course of conduct continued uninterrupted under the supervisory authority of Lieutenant Burger and Captain/Major McMahon with the Plaintiff's submission of her work day hours regularly approved resulting in the calculation of her wages accordingly.

38.     Between ***March 16, 2022 and September 23, 2022***, James Barnacle was the Director of the Bureau of Investigations and Intelligence (BII).  Captain Jason Berfield, who had no prior canine experience, became Trisha Hoover's Supervisor on or about ***August 10, 2022*** with Captain Berfield reporting to and under the direct supervision of Director Barnacle.

39.     Upon assuming the role of Supervisor to Trisha S. Hoover on August 10, 2022, Captain Berfield immediately and consistently treated Trisha S. Hoover differently that her male co-workers under his supervision.  The basis for this disparate treatment was due to Trisha S. Hoover's gender and; further, in retaliation for her initiating a Grievance with the Union

Association on September 11, 2022 for violation of material terms and conditions of the Collective Bargaining Agreement AND for filing a Discrimination Claim on September 15, 2022 with the EEOC for discriminatory and retaliatory treatment as compared to treatment of male handlers in the K-9 Drug Interdiction Unit.

40.    In Article 30 of the Collective Bargaining Agreement executed by the Department of Corrections and the Corrections Officers' Union (the "Association") on behalf of its Members, there is an explicit prohibition against discrimination on the basis of Sex/Gender and on the basis of Association Membership.

41.    The conduct and the actions of the Defendant, by and through its Employees and Agents, Director Barnacle and Captain Berfield, taken against Trisha S. Hoover are rendered suspect and called into question as discriminatory and retaliatory given Trisha S. Hoover's gender thereby implicating Title VII of the Civil Rights Act of 1964.

42.    The conduct and the actions of the Defendant, by and through its Employees and Agents, Director Barnacle and Captain Berfield, taken against Trisha S. Hoover are rendered suspect and called into question as discriminatory and retaliatory given Trisha S. Hoover's and the fact of her Membership in the Association and her activities as a Union Representative of the Association and her advocacy for the rights of Corrections Officers thereby violating the Collective Bargaining Agreement.

43.    On *Friday, September 9, 2022*, CO-2 Trisha Hoover was "*Off Work*".

44.    On *Friday, September 9, 2022*, a schedule change was made to the existing original Schedule for K-9 CO-2 Officers. CO-2 Trisha Hoover did not see the Schedule Change because she was "*off work*" that day.  On the original existing schedule, CO-2 Trisha Hoover was scheduled to be at SCI-Forest on *Monday, September 12, 2022*, because that Correctional Facility had credible intelligence that a Person scheduled to visit that Facility on Monday, September 12, 2022, would be smuggling Suboxone into that Facility.

45.    On *Saturday, September 10, 2022*, CO-2 Trisha Hoover was "*Off Work*".

46.    On *Sunday, September 11, 2022,* CO-2 Trisha Hoover was "*On Duty*" and worked.

*47.*     *On Sunday*, *September 11, 2022*, CO-2 Trisha Hoover received an *E-mail* from Captain Berfield citing the schedule change and stating that she was to report to SCI-Somerset on Monday, September 12, 2022 without any further explanation or rationale for the change to her schedule.

48.     *On Sunday*, *September 11, 2022*, CO-2 Trisha Hoover saw the Schedule Change for the 1st time.  Upon her review of the Schedule Change on Sunday, September 11, 2022, CO-2 Hoover saw that her schedule for Monday, September 12, 2022 had been changed from an assignment at SCI-Forest to an assignment at SCI-Somerset.

49.     On *Sunday, September 11, 2022*, CO-2 Trisha Hoover sent a *responsive E-mail* to Captain Berfield stating that she was already scheduled to be at SCI-Forest on Monday, September 12, 2022, because that Correctional Facility had credible intelligence that a Person scheduled to visit that Facility on *Monday, September 12, 2022*, would be smuggling Suboxone into that Facility on *Monday, September 12, 2022.*

50.     On *Sunday, September 11, 2022*, a responsive 2nd *E-mail* was sent from Captain Berfield to CO-2 Trisha Hoover again stating that she was to report to SCI-Somerset on Monday, September 12, 2022 without any further explanation or rationale for the change to her schedule.

51.     On *Monday, September 12, 2022*, CO-2 Trisha Hoover was "*On Duty*" and worked.

52.     CO-2 Trisha Hoover did not see that 2nd and responsive *E-mail* from Captain Berfield which again stated that she was to report to SCI-Somerset on Monday, September 12, 2022 without any further explanation or rationale for the change to her schedule until she was driving to SCI-Forest with her dogs on the morning of Monday, September 12, 2022.

53.     On *Monday, September 12, 2022*, although CO-2 Trisha Hoover was originally scheduled to report to SCI-Forest with her canines for purposes of the investigation of a known contraband smuggling Visitor at that facility and while in transit to Marienville, PA per the scheduled visit to SCI-Forest, she opened that 2nd and responsive *E-mail* of Sunday, September 11, 2022 from Captain Berfield stating that she was to report to SCI-Somerset on Monday, September 12, 2022 without any further explanation or rationale for the change to her schedule.

54.    Given the anomalous nature of this unexplained sudden notice and directive from Captain Berfield, the Plaintiff contacted her supervisor, Lieutenant Joseph Burger, and requested that he contact Captain Berfield to inquire about the basis for the change in her schedule from a pre-planned investigative assignment with intelligence on Suboxone smuggling at SCI-Forest to SCI-Somerset without any explanation as to the purpose of her new and unknown assignment at that facility.

55.    CO-2 Trisha Hoover never heard back from her supervisor and despite the curious directive which was contrary to protocol, she immediately re-routed and proceeded directly to SCI-Somerset where she arrived at approximately 9:30 a.m. with her canines, performed some work at that correctional facility despite the fact that there were multiple K-9 handlers at that facility, and issued a Report relating to K-9 work she performed.

56.    Neither Lieutenant Joseph Burger nor Captain Berfield called back to CO-2 Trisha Hoover with an explanation as to why her schedule had been switched from SCI-Forest to SCI-Somerset.  Therefore, on ***Sunday, September 11, 2022***, CO-2 Hoover circulated an E-mail to Captain Berfield, Director Barnacle, Lieutenant Burger, other Department of Corrections Officers, and her Union Agent,  placing the Department of Corrections on ***<u>NOTICE</u>*** that she was filing a ***Class Grievance*** with her Union, the ***Pennsylvania State Corrections Officers Association***, for violations of the Collective Bargaining Agreement with regard to Non-compliant Work Schedule Changes.

57.    As stated in the previous paragraph, CO-2 Hoover's Supervisor, Lieutenant Joseph Burger, never called her back on *Monday, September 12, 2022* relating to her efforts to reach out to him as to why she was re-scheduled by Captain Berfield from SCI-Forest to SCI-Somerset.  Therefore, CO-2 Hoover called Lieutenant Joseph Burger on ***Tuesday, September 13, 2022***.

58.    On ***Tuesday, September 13, 2022***, CO-2 did connect via cell phone with her Supervisor, Lieutenant Joseph Burger.  When she asked him: "***Why didn't anyone call me back about my change in schedule yesterday from SCI-Forest to SCI-Somerset?***" Lieutenant Joseph Burger then informed CO-2 Trisha Hoover: "***Captain Berfield told me NOT to call you back.  He said:*** '***Let the Bitch slit her own throat!***' "

59.    On **September 15, 2022,** upon reflection and discernment of that shocking revelation of Tuesday, September 13, 2022 by her direct Supervisor, Lieutenant Joseph Burger as to what his direct Supervisor, Captain Jason Berfield told him, CO-2 Sergeant Trisha S. Hoover filed a **Complaint** with the **Equal Employment Opportunity Commission** (hereinafter "**EEOC**").

60.    On **Sunday, September 11, 2022**, CO-2 Sergeant Trisha Hoover placed the PA Department of Corrections on written **Notice**, via e-mail, that she was initiating a **Class Action Grievance** with her Union against the Department of Corrections.

61.    On **Thursday, September 15, 2022,** CO-2 Sergeant Trisha Hoover filed a **Complaint** with the EEOC.

62.    On **Friday, September 23, 2022**, in a retaliatory response, the Pennsylvania Department of Corrections did the following to CO-2 Sergeant Trisha S. Hoover :

       a) seized her vehicle;

       b) seized her two (2) canines,

       c) seized her gun,

       d) seized her badge,

       e) seized her uniforms, AND

       f) advised her that she was placed on immediate "Unpaid Suspension".

63.    On Sunday, September 11, 2022, CO-2 Sergeant Trisha Hoover sent an e-mail to the Department of Corrections, thereby providing written **_NOTICE_** that she was initiating a **Class Action Grievance** against the Department of Corrections for violation of the Collective Bargaining Agreement between her Union and the Department of Corrections.

64.    Then, one (1) day after placing the Department of Corrections on written **Notice**, via e-mail, on **Sunday, September 11, 2022** that she was filing a **Class Grievance** with her **Union**, CO-2 Sergeant Trisha Hoover received an E-mail from Harold Kertes, who identified himself as a Criminal Investigator for the Bureau of Investigations and Intelligence.

65.    Criminal Investigator Kertes advised  CO-2 Sergeant Trisha Hoover that she had to meet with him, in person, at the Department's  Headquarters, i.e., Central Office, on **Thursday, September 22, 2022** to discuss reports of information that he had received from the Department of Corrections.

66.     During their meeting on ***Thursday, September 22, 2022***, Criminal Investigator Kertes pointedly asked CO-2 Segeant Trisha Hoover "***When does your day begin?***" She responded with detail as per the longstanding policy authorized by her former supervisor and his supervisor that her work day commences with her care and maintenance of her canines. More specifically, that her work day was deemed to commence when she engaged in the necessary care and maintenance of the dogs at her home including removing the dogs from their kennel <u>AND</u> walking the dogs outside to permit them to defecate and urinate <u>AND</u> feeding the dogs prior to getting in her Department-issued vehicle to travel to the scheduled location for her work that day as a K-9 handler.

67.     Criminal Investigator Kertes interjected "***No, your day begins the moment you get in your Department of Corrections' vehicle***". Criminal Investigator Kertes further stated to CO-2 Sergeant Trisha Hoover that she was not working forty (40) hours for justification for payment of forty (40) hours of Regular Time Wages <u>AND/OR</u> that she was not working more than the forty (40) hours for justification for payment of any Overtime Wages beyond forty (40) hours under the standard that he stated.

68.     The origins of the reports of theft and fraud were instituted by Captain Berfield with the direction, knowledge, assent, and approval of Director Barnacle who espoused that the former treatment of the commencement of the work day was incorrect and that the work day instead commences at the time that Trisha S. Hoover started her Department vehicle in the morning to drive to her assignment for that day. Hence, Berfield and Barnacle in coordination proffered allegations that Trisha S. Hoover was stealing time and that a criminal investigation was warranted thereby causing Harold Kertes to initiate a formal criminal investigation with threats of filing Felony Criminal Charges against Trisha S. Hoover.

69.     After this initial questioning of Trisha S. Hoover engaged in by Criminal Investigator Kertes, he then demanded that CO-2 Sargent Trisha S. Hoover hand-over her cell phone to him. Trisha S. Hoover then deleted one (1) text message from a friend that she had received that was outside the scope of work and bore no relevance to the matter raised by Criminal Investigator Kertes. Immediately thereafter, Criminal Investigator Kertes aggressively grabbed Trisha S. Hoover's cell phone and yanked it out of her hands.

70.     Trisha S. Hoover's Supervisor, Lieutenant Joseph Burger, was also summoned to the Department of Corrections' Central Office as Criminal Investigator Kertes believed that the text message deleted by Trisha S. Hoover was to Lieutenant Burger or from Lieutenant Burger.  Criminal Investigator Kertes then also seized Lieutenant Burger's cell phone.

71.     On *Friday, September 23, 2022*, Trisha S. Hoover's Department of Corrections' vehicle was summarily seized from her along with her two (2) canines, her gun, and her badge AND she was advised that she was then placed on immediate "Unpaid Suspension" AND Trisha S. Hoover was then given a different Department of Corrections' vehicle and was directed by Criminal Investigator Kertes to drive herself back to Crawford County and immediately surrender that vehicle to the Department of Corrections' facility at SCI-Cambridge Springs AND Trisha S. Hoover was directed to leave all Department of Corrections' Uniforms in that vehicle.

72.     It is believed and therefore averred that the re-routing of Trisha S. Hoover to SCI-Somerset on September 12, 2022 from her previously-scheduled assignment at SCI-Forest was a deliberate scheme and pretext to seek to have Trisha S. Hoover disregard a direct Order from a Superior.  However, Trisha S. Hoover instead complied with the directive from Captain Berfield and then Investigator Kertes was deployed to confront Ms. Hoover and assert the unfounded and manufactured allegations of "Misconduct".

73.     It is believed and therefore averred that Director Barnacle and Captain Berfield acted in concert to concoct and engage in this designed effort to seek to make unfounded Felony Criminal allegations against Trisha S. Hoover without any basis in fact AND/OR to create some pre-textual basis to impose sanctions or undermine her employment status without any basis in fact.

74.     On September 24, 2022, CO-2 Sergeant Trisha Hoover received a letter from Director Barnacle purporting to confirm the verbal notification of her "Suspension without Pay" effective at the close of business on September 23, 2022 predicated on the allegations that she had not completed full and entire eight (8) hour Regular Work Time shifts from the

dates of on or about March 16, 2022 through September 12, 2022 <u>AND</u> that she had falsified Overtime Wage documents for that same time period <u>AND</u> further reference was made to Trisha S. Hoover's alleged refusal to report to SCI-Somerset <u>AND</u> further reference was made to her actions in deleting one (1) text message from her cell phone when asked by Criminal Investigator Harold Kertes to hand her cell phone over to him which he then proceeded to grab and yank from her hands as referenced herein.

75.    The September 24, 2022 disciplinary Letter of Suspension for Trisha S. Hoover was signed by Director James D. Barnacle *"FOR George M. Little, Acting Secretary of the Department of Corrections"* with a copy of said disciplinary Letter of Suspension placed in Trisha S. Hoover's Official Personnel File with the Department of Corrections.

76.    The Department of Corrections failed to engage in and comply with the ***Collective Bargaining Agreement*** relative to progressive disciplinary measures.  Rather, Director James Barnacle summarily imposed an immediate "Suspension without Pay" and without Benefits.  The declination of Benefits was a further direct violation of traditional and customary Employee Protections under the Collective Bargaining Agreement.

77.    Plaintiff, Trisha S. Hoover, notified the Department of Corrections, in writing, on ***Sunday, September 11, 2022*** that she was initiating a ***Grievance*** with the Union Association <u>AND</u> further filed a ***Complaint*** on ***September 15, 2022*** with the United States Equal Employment Opportunity Commission, i.e."EEOC", citing discrimination relating to Gender in violation of Title VII or the Civil Rights Act of 1964 <u>AND</u> as retaliation for a Grievance filed with the Union Association for breach of the Collective Bargaining Agreement between the Department of Corrections and the Pennsylvania State Corrections Officers Association Union.

78.    In accordance with the "Notice of Suspension", Trisha S. Hoover was deprived of her Regular Time wages, her Overtime wages, and Employee Benefits with the Department of Corrections from ***September 24, 2022 through January 7, 2023***.

79. On January 9, 2023, the Department of Corrections agreed to retract the Suspension and to reinstate Trisha S. Hoover to employment with the Department of Corrections as a Corrections Officer-1 assigned to SCI - Cambridge Springs with a wage scale of $38.33 per hour.  At the time of her suspension, she was a Corrections Officer-2 with a wage scale of $42.33 per hour.

80. The Department of Corrections further agreed to make Trisha S. Hoover financially whole by granting her back pay for Regular Time Wages for the period of suspension from September 24, 2022 through January 7, 2023 along with an allotment for the projected loss of Overtime wages during that same time period.  A remedy was further afforded for the declination of Benefits which included a payment for medical services provided to Trisha S. Hoover's minor daughter between September 24, 2022 through January 7, 2023, which should have been covered by Ms. Hoover's medical health insurance.

81. Pursuant to notice issued on ***May 16, 2023***, the EEOC noted that it would suspend its investigation with no determination made as to the merits of the underlying claims of discrimination and further notified Trisha S. Hoover of her "Right to Sue" and the framing of the time period of ninety (90) days to commence any legal action.

82. Notwithstanding the election of the EEOC to suspend its investigation short of an adjudication of the merits of the claims of discrimination and ostensibly predicated on the reinstatement of Trisha S. Hoover to employment with the Department of Corrections, the Plaintiff has some material residual sanctions that serve to create damaging monetary and financial consequences and further ramifications as to her employment status.

83. Trisha S. Hoover was demoted from a Corrections Officer-2 to a Corrections Officer-1 with a disparate wage level of $38.33 from her former wage level of $42.33, which will cumulatively have a substantial impact including the calculation for Regular Time Pay AND Overtime Pay up to her retirement from the Department of Corrections. The disparity in income will have a correlative and extreme negative impact on Trisha S. Hoover's Pension AND on her capacity to participate in and apportion income to the Deferred Compensation Income Program which affords her ability to take advantage of tax-deferment treatment of earned wages over an extended period of time.

84.     Trisha S. Hoover was demoted from her rank as CO-2 Sergeant AND was removed from her specialized role as a Handler with the K-9 Drug Interdiction Unit for which she had received particularized training and expertise and her two (2) canines were retired AND Trisha S. Hoover was permanently separated from her two (2) canines.

85.     Furthermore, the fact that Trisha S. Hoover has a Disciplinary Letter in her Official Personnel File renders her effectively unable to make any advancements or promotions within the Department of Corrections thereby stagnating her income capacity.

86.     Trisha S. Hoover concedes that the Department of Corrections has made her whole relative to satisfactory reimbursement for her financial losses incurred from the time period of "Suspension without Pay" from September 24, 2022 through January 7, 2023.

87.     However, Trisha S. Hoover's reinstatement to employment with a demotion and the ensuing diminishment of Regular Time Wages AND Overtime Wages directly and negatively impact her weekly income for the remainder of her employment tenure with the Department of Corrections; AND directly and negatively impact her Pension; AND directly and negatively impact her capacity to contribute to the Deferred Compensation Income Program for tax deferred savings; AND directly and effectively forecloses any promotion or advancement opportunities within the Department of Corrections due to the existence of the Disciplinary Letter in her Official Personnel File.

88.     The Department of Corrections has offered no legitimate or articulable basis for the demotion and sanctioning of Trisha Hoover other than by implication.  Rather, the Department is predicating its actions on those unfounded and baseless allegations of Felony Fraud and Theft relative to falsifying wage documents.

89.     If the Department of Corrections deemed those allegations of fraud and theft relative to calculation of Regular Time wages and calculation of Overtime wages as well-founded , then there would have been no basis to retract the suspension and seek to make Trisha S. Hoover whole for her loss of income and benefits during that time period of September 24, 2022 through January 7, 2023.

90. The retraction of her Suspension without pay and her reinstatement are consistent with an admission of the failure to establish that there was any commission of fraud or theft, which conclusion is correct given the considerable evidence supporting and documenting that Sergeant CO-2 Trisha Hoover acted with complete propriety as to the calculation of her work hours as signed-off by her Superiors and Supervisors consistent with the well-settled practice and parameters set by them as to the official start of her work day and conclusion of her work day.

91. The fact that Director Barnacle and Captain Berfield disputed and disagreed with this policy failed to render Trisha Hoover's adherence and compliance with that practice to be criminalized and severely jeopardized her continued employability between September 23, 2022 and January 9, 2023.

92. Director Barnacle and Captain Berfield sought to treat Trisha Hoover disparately from her male co-workers in the K-9 Drug Interdiction Unit given her gender.  Further, Director Barnacle prompted and directed Captain Berfield to take retaliatory action against Trisha Hoover in the form of the false allegations of felony criminal conduct given her protected activities as a Union Association Representative in which she had often come into dispute with Director Barnacle and Captain Berfield in the past.

93. Director Barnacle and Captain Berfield perceived Trisha Hoover to be a problematic underling employee given her claims of discrimination against Captain Berfield and her union association advocacy as a Union Representative and sought to concoct and manufacture false allegations of Felony Fraud and Felony Theft against her and otherwise set her up to jeopardize her continued employability with the Department.

94. Director Barnacle initiated this scheme utilizing his authority over Criminal Investigations to compel Acting Captain Berfield, who was then in the capacity of Trisha Hoover's Supervisor, to initiate the claims of financial misconduct irrespective of and in total disregard to the documented facts and supporting documentation that Trisha Hoover's work day calculations were proper and signed-off upon by her former Superior Officers and Supervisors.

18

95.    The fundamental fact that there was never any foundation to the allegations of financial misconduct by Trisha Hoover in terms of fraud, theft, or stealing of time on the job serves to render suspect and besmirch the entire process of investigation, adjudication with summary suspension without pay, and ultimately the reinstatement with a demotion relative to the Department's intentional, wilful, wanton, and outrageous conduct toward Trisha S. Hoover.

96.    The Department's act of reinstating Trisha S. Hoover with a demotion and the significant attendant financial consequences therefrom rests solely on some last vestiges of the original charges of misconduct being warranted when, to the contrary, those bogus charges were never established or supported under any reasonable or good faith application of the facts and circumstances.

## COUNT I
## TITLE VII - DISCRIMINATION AND RETALIATION ON THE BASIS OF SEX

97.    Trisha Hoover incorporates by reference herein all of the allegations set forth in the averments of this Complaint as though the same were set forth at length herein.

98.    Trisha Hoover is a member of a protected class on the basis of Sex/Gender.

99.    Trisha Hoover was performing her job duties in a manner that was consistent with the Department's legitimate expectations and all applicable policies and protocols including in relevant part the calculation of her work hours for purposes of regular time wages and overtime wages.

100.    The Department of Corrections discriminated against Trisha Hoover as described above, including treating her disparately from other male co-workers within the K-9 Drug Interdiction Unit culminating with the illicit scheme to falsely accuse her of fraud and theft as to her wages and overtime calculations AND falsely accuse her of disobeying a direct Order from a Superior Officer and Supervisor.

101.    The Department of Corrections also retaliated against Trisha Hoover as described above.

102.    The Department of Corrections actions were taken with a willful, wanton, and intentional disregard of Trisha Hoover's rights under Title VII.

19

103.    As a direct and proximate result of said unlawful conduct and practices in purposeful disregard of Trisha Hoover's rights, she has suffered humiliation, degradation, emotional distress, mental anguish, and other consequential damages AND monetary damages consisting of lost Regular Time wages, lost Overtime wages, diminished wage earning capacity, diminution of Pension, limitation of her capacity to participate in the Deferred Compensation Income Program AND curtailment of her capacity for advancement and promotion within the Department of Corrections, which said monetary damages are derivative therefrom as a result of her reduced pay rate given her Demotion to a CO-1 Corrections Officer upon Reinstatement.

104.    The damages sought by Plaintiff under Count I of this Complaint are in excess of $75,000.00.

## COUNT II
## DISCRIMINATION AND RETALIATION ON THE BASIS OF THE EXERCISE OF THE RIGHT TO ENGAGE IN UNION ASSOCIATION ACTIVITIES AND ADVOCATE AS A UNION ASSOCIATION REPRESENTATIVE WITHOUT REPRISAL

105.    Trisha Hoover incorporates by reference herein all of the allegations set forth in the averments of this Complaint as though the same were set forth at length herein.

106.    Trisha Hoover is a member of a protected class on the basis of her status as a Union Association Representative as to the advocacy of labor rights and protections on her own behalf AND the labor rights and protections of the Union Personnel employed by the Department of Corrections.

107.    Trisha Hoover was performing her duties as a Union Association Representative in a manner that was consistent with the law and the Collective Bargaining Agreement governing the Defendant agency and its employees, which included the right to freely exercise her freedom of speech, association, and advocacy.

108.    The Department of Corrections discriminated against Trisha Hoover as described above, including treating her disparately from other co-workers who were not acting in the capacity of Union Association Representatives, culminating with the illicit scheme to falsely accuse her of fraud and theft as to the calculation of her Regular Time Wages and Overtime Wages as a direct reprisal for her lawful exercise of her rights, duties, and obligations as a Union Association Representative.

109.    The Department of Corrections also retaliated against Trisha Hoover as described above.

110.    The Department of Corrections actions were taken with a willful, wanton, and intentional disregard of Trisha Hoover's rights under Title VII.

111.    As a direct and proximate result of said unlawful conduct and practices in purposeful disregard of Trisha  Hoover's rights, she has suffered humiliation, degradation, emotional distress, mental anguish, and other consequential damages AND monetary damages consisting of lost Regular Time wages, lost Overtime wages, diminished wage earning capacity, diminution of Pension, limitation of her capacity to participate in the Deferred Compensation Income Program AND curtailment of her capacity for advancement and promotion within the Department of Corrections, which said monetary damages are derivative therefrom as a result of her reduced pay rate given her Demotion to a CO-1 Corrections Officer upon Reinstatement.

112.    The damages sought by Plaintiff under Count II of this Complaint are in excess of $75,000.00.

**COUNT III**
**RETALIATION ON THE BASIS OF**
**INITIATING A GRIEVANCE**
**WITH THE PENNSYLVANIA STATE CORRECTIONS OFFICERS ASSOCIATION**
**AND**
**FILING A DISCRIMINATION CLAIM WITH**
**THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (EEOC)**

113.    Trisha S. Hoover incorporates by reference herein all of the allegations set forth in the averments of this Complaint as though the same were set forth at length herein.

114.    Trisha S. Hoover is a member of a protected class on the basis of her status as an Employee of the Pennsylvania Department of Corrections and a Union Member of the Pennsylvania State Corrections Officers Association.

115.    Trisha Hoover possessed the lawful right to initiate a *Grievance* on *September 12, 2022* with her Union, the Pennsylvania State Corrections Officers Association, without the threat of reprisal from the Department of Corrections for the exhaustion of that protection.

116.    CO-2 Hoover was *"Suspended without Pay"* from her Employment on *September 22, 2022.*

117.    Trisha Hoover possessed the lawful right to file a Claim for Discrimination with the EEOC on *September 15, 2022* without the threat of reprisal from the Department of Corrections for the exhaustion of that protection.

118.    CO-2 Hoover was *"Suspended without Pay"* from her Employment on *September 22, 2022.*

119.    The Department of Corrections discriminated against Trisha Hoover as described above, including treating her disparately from other co-workers who have not had cause to file a *Grievance* with the  Pennsylvania State Corrections Officers Association for employment actions against them by the Department of Corrections, culminating with the Department of Corrections duly retracting the suspension and making Trisha Hoover whole in regard to the damages attributable to that misbegotten suspension but; then, only reinstating her to a different and demoted employment position with a lesser pay scale serving to directly impact her and cause monetary diminution and damages without any legitimate articulable predicate for that residual sanction.

120.    The Department of Corrections discriminated against Trisha Hoover as described above, including treating her disparately from other co-workers who have not had cause to file a *Complaint* with the EEOC for employment actions against them by the Department of Corrections, culminating with the Department of Corrections duly retracting the suspension and making Trisha S. Hoover whole in regard to the damages attributable to that misbegotten suspension but; then, only reinstating her to a different and demoted employment position with a lesser pay scale serving to directly impact her and cause monetary diminution and damages without any legitimate articulable predicate for that residual sanction.

121.    The Department of Corrections also retaliated against Trisha Hoover as described above.

122.    The Department of Corrections actions were taken with a willful, wanton, and intentional disregard of Trisha Hoover's rights as an Employee of the Pennsylvania Department of Corrections and a Union Member of the Pennsylvania State Corrections Officers Association under the *Collective Bargaining Agreement* between the PA Department of Corrections and the Pennsylvania State Corrections Officers Association.

123.    The Department of Corrections actions were taken with a willful, wanton, and intentional disregard of Trisha Hoover's rights as an Employee of the Pennsylvania Department of Corrections and a Union Member of the Pennsylvania State Corrections Officers Association under Title VII.

124.    As a direct and proximate result of said unlawful conduct and practices in purposeful disregard of Trisha  Hoover's rights, she has suffered humiliation, degradation, emotional distress, mental anguish, and other consequential damages AND monetary damages consisting of lost Regular Time wages, lost Overtime wages, diminished wage earning capacity, diminution of Pension, limitation of her capacity to participate in the Deferred Compensation Income Program AND curtailment of her capacity for advancement and promotion within the Department of Corrections, which said monetary damages are derivative therefrom as a result of her reduced pay rate given her Demotion to a CO-1 Corrections Officer upon Reinstatement.

125.    The damages sought by Plaintiff under Count III of this Complaint are in excess of $75,000.00.

**COUNT IV**
**BREACH OF THE COLLECTIVE BARGAINING AGREEMENT**

126.    Trisha Hoover incorporates by reference herein all of the allegations set forth in the averments of this Complaint as though the same were set forth at length herein.

127.    Trisha S. Hoover is an Employee of the Pennsylvania Department of Corrections and a Union Member of the Pennsylvania State Corrections Officers Association.

128.    A ***Collective Bargaining Agreement*** was in place at all times relevant to this Complaint.with regard to its Employees who were Union Members of the Pennsylvania State Corrections Officers Association.

129.    The Department of Corrections was subject to the ***Collective Bargaining Agreement*** and its conduct relative to Trisha Hoover as described above*.*

130.    Under Article 30 of the ***Collective Bargaining Agreement,*** the Department is explicitly proscribed from discriminating against its employees on the basis of sex as well as on the basis of membership in the Union Association.

131.    The Department of Corrections has expressly breached that provision and the contractual rights of Trisha Hoover under the Collective Bargaining Agreement based upon the course of discrimination and retaliation described above.

132.    The Department of Corrections breached the Collective Bargaining Agreement in pursuing a baseless claim of alleged criminal conduct against Trisha Hoover under false pretenses in an effort to cause injury, damages, and loss of employment without just cause.

133.    The Department of Corrections breached the Collective Bargaining Agreement in summarily issuing a "Suspension without Pay" as to Trisha Hoover effective on September 23, 2022 without recourse to and the exhaustion of progressive disciplinary measures as compelled under the  Collective Bargaining Agreement.

134.    The Department of Corrections breached the Collective Bargaining Agreement in reinstating Trisha Hoover after the retraction of the suspension without pay with a demotion and attendant reduced pay rate without justification.

135.   The Department of Corrections actions were taken with a willful, wanton, and intentional disregard of Trisha Hoover's rights under the Collective Bargaining Agreement.

136.   As a direct and proximate result of said unlawful conduct and practices in purposeful disregard of Trisha Hoover's rights, she has suffered humiliation, degradation, emotional distress, mental anguish, and other consequential damages AND monetary damages consisting of lost Regular Time wages, lost Overtime wages, diminished wage earning capacity, diminution of Pension, limitation of her capacity to participate in the Deferred Compensation Income Program AND curtailment of her capacity for advancement and promotion within the Department of Corrections, which said monetary damages are derivative therefrom as a result of her reduced pay rate given her Demotion to a CO-1 Corrections Officer upon Reinstatement.

137.   The damages sought by Plaintiff under Count IV of this Complaint are in excess of $75,000.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Trisha S. Hoover prays that this Honorable Court:

A.   Enter judgment in favor of Plaintiff, Trisha S. Hoover, and against the Defendant, Pennsylvania Department of Corrections, for violation of her rights under Title VII;

B.   Declare that the actions of the Defendant, Pennsylvania Department of Corrections, constituted unlawful discrimination;

C.   Award the Plaintiff, Trisha S. Hoover, compensatory damages, including: but not limited to: lost wages and benefits as will reasonably compensate her for her losses, and damages for humiliation, emotional distress, and mental anguish;

D.   Award the Plaintiff, Trisha S. Hoover, punitive damages in such amount as this Honorable Court deems proper;

E.   Award the Plaintiff, Trisha S. Hoover, her litigation costs, attorney's fees, and non-taxable expenses in this action;

F.   Reinstate Plaintiff to her pre-Suspension and pre-Reinstatement position as a K-9 Drug Interdiction Corrections Officer - 2 at a Rank of Sergeant; and

G.   Grant the Plaintiff, Trisha S. Hoover, such other and further relief as this Honorable Court deems equitable and just.

WHEREFORE, Plaintiff, Trisha S. Hoover, hereby demands a Trial by Jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable**.** The damages sought by Plaintiff under Count I, Count II, Count III, and Count IV of this Complaint are each in excess of $75,000.00.

**A JURY TRIAL OF TWELVE (12) JURORS IS HEREBY DEMANDED**

Respectfully submitted,

SISINNI LEGAL

By: _ /s/ Andrew J. Sisinni, Esquire _
        Andrew J. Sisinni, Esquire
          Attorney for Plaintiff
        1314 Griswold Plaza
        Erie, PA 16501
        (814) 864-5841
        PA I.D. #55575

Dated:  August 11, 2023

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of our knowledge, information and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after reasonable opportunity for further investigation or discover; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully submitted,

SISINNI LEGAL

By: ___*/s/ Andrew J. Sisinni, Esquire*___
       Andrew J. Sisinni, Esquire
        Attorney for Plaintiff
       1314 Griswold Plaza
       Erie, PA 16501
       (814) 864-5841
       PA I.D. #55575

Dated:  August 11, 2023