IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRISHA S. HOOVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | C.A. No. 1:23-CV-237 |
| | ) | |
| PENNSYLVANIA DEPARTMENT | ) | |
| OF CORRECTIONS, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

U.S. D.J. Susan Paradise Baxter

## I.    Introduction

On August 11, 2023, Plaintiff filed a four-count Complaint, alleging: (1) discrimination and retaliation on the basis of sex; (2) discrimination and retaliation for engaging in union activity (3) retaliation for filing complaints with the Equal Employment Opportunity Commission ("EEOC"), and the Pennsylvania State Corrections Officers Association ("PSCOA") and; (4) breach of contract. *See generally* ECF No. 1. Only the first three claims remain all of which are brought before this Court under Title VII.

Defendant moved for summary judgment. ECF No. 33. This motion is now fully briefed and ripe for disposition.

## II.    Factual Background

The following facts are drawn primarily from Defendant's Concise Statement and

1

Plaintiff's response thereto. *See* ECF Nos. 36, 52. Where disputes exist, they are noted where relevant.

This case arises from allegations of discrimination and retaliation brought by Trisha S. Hoover against her employer, the Pennsylvania Department of Corrections ("DOC"). During the relevant time period, Plaintiff worked as a sergeant and canine (K-9) handler. ECF No. 52 ¶ 6. She was the only female K-9 handler in the western region and she was a union representative. *Id.* ¶ ¶ 2, 30. Her annual performance reviews were generally positive. *Id.* at ¶ 34.

As of August of 2022, Plaintiff reported to Lieutenant Burger, who was supervised by Acting Captain Berfield. Both Burger and Berfield were subordinate to Director Barnacle.

Within the DOC, "Side Agreements" govern certain positions, including K-9 handlers, whose responsibilities include the care and maintenance of their assigned dogs.[1] According to the K-9 Drug Interdiction Unit Side Agreement, daily schedules are to be distributed two weeks in advance. ECF No. 36-2.

Over the course of a weekend in early September 2022, there were a series of communications regarding the scheduling of K-9 units for Monday morning. On Friday and Saturday, September 9 and 10, 2022, Burger emailed schedule changes for the upcoming work week, directing all K-9 handlers in the western region to report to State Correctional Institution at

---

[1] The Side Agreement provides that a K-9 handler's day begins when he or she departs from her residence and the workday ends upon return to their residence. *Id.* The Side Agreement provides sixteen hours of compensatory time for off-duty dog care. *Id.* The Side Agreement permits, with a minimum of 24-hour notice, management may flex the start time of a Handler by two hours before the start of the shift. *Id.* Shift hours are considered 0800-1600. ECF No. 36-2. Flex start time can start as early as 0600 ending at 1400 or as late as 1000 ending at 1800. *Id.* Anytime required beyond the shift is considered overtime. ECF No. 55-5 p. 55:25.

2

Somerset ("SCI-Somerset") on the following Monday, September 12, 2022. ECF No. 52 at ¶ ¶ 10, 11.

On the morning of Sunday, September 11, 2022, Plaintiff was informed separately of the need for a K-9 unit at SCI Forest on September 12, 2022. ECF No. 36-3. The same day, Plaintiff responded to Burger's emails stating: "Sgt. Rosenberger and myself were scheduled to be at SCI Forest on Monday September, 12th… I will be going to SCI Forest on Monday…" ECF No. 36-3. At the same time, Plaintiff also emailed various supervisory and union-related personnel, including Burger and Berfield, advising of her intent to file a grievance for failure to provide timely scheduling under the terms of the Side Agreement.  ECF No. 57-20. Berfield testified that following his receipt of these emails, he contacted SCI-Forest to inquire about Plaintiff's schedule at SCI-Forest. ECF No. 56-7 p. 14:13. He was informed that a K-9 was no longer required at SCI-Forest. *Id.* Berfield emailed Hoover stating that "Your schedule has remained the same… [t]he destination is Somerset." ECF No. 36-3.[2]

Plaintiff maintains that she did not receive Berfield's Sunday afternoon email directing her to SCI Somerset until she was already en route to SCI Forest on the morning of September 12, 2022. ECF No. 52 ¶ 16. Upon reading the email, Plaintiff contacted Burger for clarity as to where she was supposed to report and requested that he contact Berfield for guidance as to where she should report. *Id.* ¶ 18. In a signed statement, Burger related that when he asked Berfield for clarification, Berfield responded "No, don't call her back. Let the Bitch slice her own throat." ECF

---

[2] In his deposition, Berfield explained that he did not, nor was he required to, explain in detail why this supervisory command was given. ECF No. 55-7 at 42:19-44:15. Hoover disputes this explaining that Berfield was required to give her more information.

No. 57-8. Berfield refutes this in his deposition, testifying that he never made this statement or any other statement to that effect. ECF No. 36-5, p. 22-23.

Plaintiff, not hearing back from Burger, proceeded to SCI-Somerset arriving over 4 hours late. *Id.* ¶¶ 20, 21. Plaintiff was the only K-9 handler to report to SCI-Somerset late. *Id.* ¶ 31.

Following the incident, Burger submitted a Report of the Incident. *Id.* ¶ 22. DOC Investigator Harold Kertes was assigned to conduct an administrative investigation into insubordination. ECF No. 55-13 p. 56:3. During that investigation, Kertes reviewed Hoover's vehicle telematics data and identified discrepancies in her reported work hours. *Id.* at p. 34:5. The investigation expanded to include Plaintiff's time reporting practices. *Id.* Specifically, Plaintiff recorded work time beginning when she began preparing her assigned dogs at home before leaving, including feeding and walking them, rather than when she departed for work. ECF No. 55-5 at p. 57-59.

Plaintiff disputes that her refusal to comply with the direct order to report to SCI-Somerset prompted the broader investigation. ECF No. 52 ¶ 23. Instead, she contends she was targeted because, as a union representative, she had repeatedly filed grievances regarding violations of the Side Agreement. *Id.*[3]

During the investigation, Plaintiff was directed to turn over all her state-issued equipment including her dogs. Her state-issued cell phone was collected for review. ECF No. 52 ¶ 25. Investigator Kertes observed Plaintiff delete at least one text message before surrendering the device. *Id.* ¶¶ 26-27. As a result of the administrative investigation, Plaintiff was suspended

---

[3] Importantly, the Complaint and the evidentiary record are silent as to any grievances prior to September 2022.

without pay effective September 23, 2022. *Id.* ¶ 28. She was informed she could face criminal charges for theft and fraud in relation to her time reporting, though there is no evidence in the record to suggest that any such criminal charges were ultimately filed.

On September 15, 2022, Plaintiff filed a Claim for Discrimination with the EEOC. Eleven days later, she filed a grievance with the Pennsylvania State Corrections Officers Association (PSCOA) challenging the suspension. *Id.* ¶ 32.

She remained suspended without pay or benefits from September 23 through January 9, 2023. *Id.* ¶ 28. Plaintiff was reinstated as a Corrections Officer One at SCI Cambridge Springs, an entry-level position with fewer overtime opportunities and approximately four dollars less hourly pay than her prior position as a CO-2 K-9 handler. *Id.* ¶¶ 33, 35.

## III.    Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). When deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Delaware River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)).

The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on

which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist).

Unsupported allegations, subjective beliefs, or argument alone cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). If the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55, n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23). In *Moore v. Walton*, 96 F.4th 616 (3d Cir. 2024), the Court of Appeals for the Third Circuit recently explained: "A genuine dispute exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might affect the outcome of the suit under the governing law." *Id.* at 622 (internal punctuation and citations omitted).

6

## IV.    Discussion

### A.  Gender Discrimination and Retaliation

Plaintiff's gender discrimination and retaliation claims fail because the record does not support an inference that any adverse employment action was taken because of her gender or in response to any protected activity under Title VII.

Plaintiff alleges generally that she was "treated different from male coworkers" and that Captain Berfield, who became her supervisor in August 2022, treated her less favorably than male officers in the K-9 unit. ECF No. 1 ¶¶ 2, 39. Defendants do not dispute that Plaintiff, as a woman, is a member of a protected class, that she was qualified for her position, or that her suspension constitutes an adverse employment action. The question, therefore, is whether the circumstances surrounding that action give rise to an inference of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Plaintiff has not produced evidence sufficient to support such an inference. Her complaint asserts that Berfield treated her differently from male handlers, but it does not identify specific conduct demonstrating gender-based discrimination. In opposing summary judgment, Plaintiff advances a broader theory that DOC officials orchestrated a scheme to engineer her suspension. That theory, however, rests largely on speculation and is unsupported by evidence in the record.

The only particularized allegation of gender-based animus concerns a statement attributed to Berfield—"let the bitch slice her own throat." Berfield denies making the remark. Even assuming the statement was made, a single offensive comment, standing alone, is insufficient as a matter of law to establish that the disciplinary action taken against Plaintiff was motivated by gender discrimination. *See, e.g., Bumbarger v. New Enter. Stone & Lime Co.*, 170 F. Supp. 3d 801, 828 (W.D. Pa. 2016). Because Plaintiff has not pointed to evidence from which a reasonable jury

7

could conclude that her suspension or demotion occurred because of her gender, Defendant is entitled to summary judgment on the gender discrimination claim.

Plaintiff's retaliation theory in Count I fails for a separate reason. To establish retaliation under Title VII, a plaintiff must show that she engaged in protected activity – such as opposing discrimination or participating in a Title VII proceeding – and that the employer took adverse action because of that activity. *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 (3d Cir. 2022); 42 U.S.C. § 2000e-3(a). Plaintiff identifies no such protected activity tied to the allegations in Count I. Membership in a protected class, standing alone, does not constitute protected activity. *See Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701–02 (3d Cir. 1995). Accordingly, because the record does not support an inference of discrimination or retaliation based on gender, Defendant is entitled to summary judgment on Count I.

## B. Discrimination and Retaliation for engaging in Union Activities

Plaintiff's next retaliation and discrimination claims rest on the premise that the DOC acted against her because of her participation in union activities. Title VII, however, does not prohibit retaliation or discrimination based on union advocacy or participation in workplace grievances. Because the conduct identified by Plaintiff concerns a contractual scheduling dispute rather than opposition to unlawful discrimination, Count II cannot proceed.

Title VII prohibits employers from discriminating against employees because of race, color, religion, sex, or national origin and from retaliating against employees who oppose practices made unlawful by the statute or participate in a Title VII proceeding. 42 U.S.C. §§ 2000e-2(a), 2000e-3(a); *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006). Workplace

8

complaints constitute protected activity only when they involve opposition to discrimination based on one of those protected characteristics. *Curay-Cramer v. Ursuline Acad. of Wilmington*, 450 F.3d 130, 135 (3d Cir. 2006); *Barber*, 68 F.3d at 701–02.

The conduct identified by Plaintiff concerns a scheduling dispute arising under a union Side Agreement. In an email to supervisory personnel, Plaintiff asserted that a schedule change violated the agreement's requirement of two weeks' notice and indicated that the matter would be grieved. ECF No. 53-20 at 5. The communication does not reference discrimination based on any protected characteristic nor does Plaintiff contend that the anticipated grievance would challenge such discrimination.

Because Plaintiff's complaint concerned a contractual scheduling issue rather than opposition to unlawful discrimination, it does not constitute protected activity under Title VII. *See Ferra v. Potter*, 324 F. App'x 189, 192 (3d Cir. 2009). Title VII does not create a cause of action for adverse treatment based on union membership or participation in union activities. Accordingly, Defendants are entitled to summary judgment on Count II.

## C.  Count III - Retaliation for Filing a Complaint with the EEOC

Plaintiff's final retaliation claim under Title VII fails because the record does not support the required causal connection between her protected activity and the suspension and demotion that followed. Although Plaintiff filed an EEOC charge shortly before the suspension was imposed, the undisputed record demonstrates that the disciplinary process leading to that action was already underway before the EEOC charge was filed.

Title VII prohibits an employer from retaliating against an employee because she has opposed an unlawful employment practice or participated in a Title VII proceeding. 42 U.S.C. § 2000e-3(a). Once again, to establish a prima facie case of retaliation, a plaintiff must establish that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the two. *Moore*, 461 F.3d at 340-41.

The first two elements are not in dispute. Plaintiff filed a charge with the EEOC on September 15, 2022 alleging discriminatory treatment in the K-9 Drug Interdiction Unit. Filing an EEOC charge constitutes protected activity under Title VII. *See Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir. 2005). Eight days later, on September 23, 2022, Plaintiff was placed on unpaid suspension – an action that qualifies as materially adverse for purposes of a retaliation claim.

So then, any dispute centers on causation. A plaintiff may establish causation through unusually suggestive temporal proximity or through other evidence from which retaliatory motive may reasonably be inferred. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000).

Here, the sequence of events undermines any inference of retaliatory motive. On September 12, 2022 – three days before Plaintiff filed her EEOC charge—Investigator Kertes scheduled a meeting with Plaintiff to occur on September 22, 2022. ECF No. 1 at ¶ 64. At the conclusion of the meeting, Plaintiff was informed that she would be placed on unpaid leave. *Id.* at ¶¶ 66–67. Thus, the disciplinary inquiry that culminated in Plaintiff's suspension had already been initiated before Plaintiff engaged in the protected activity on which she now relies.

Plaintiff argues that the meeting was pretextual. But the pretext theory she advances relates to her broader claim of gender discrimination, not to retaliation for filing an EEOC charge. As

discussed above, the Court has found no evidentiary support for that theory. Nor does Plaintiff identify evidence suggesting that the EEOC filing itself prompted the disciplinary action.

In these circumstances, the brief interval between the EEOC charge and Plaintiff's suspension is insufficient, standing alone, to establish causation. Because the undisputed record shows that the disciplinary process began before the protected activity occurred, no reasonable jury could infer that the suspension was imposed in retaliation for the EEOC filing.

Accordingly, summary judgment will be granted in favor of Defendant on Count III.

## V.    Conclusion

For the reasons above, the Defendant's Motion for Summary Judgment [ECF No. 33] will be GRANTED. An appropriate order follows.